IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| PAUL WOOSLEY, | ) | CASE NO.1:19-CV-02075 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL SECURITY, | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action by Paul Woosley under 42 U.S.C. § 405(g) seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Woolsey's 2016 application for Disability Insurance Benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Under terms of my initial[5] and

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by Senior United States District Judge Donald C. Nugent. ECF No. 12.
[2] ECF No. 1.
[3] ECF No. 8.
[4] ECF No. 8, Attachment 1.
[5] ECF No. 5.

procedural[6] orders, the parties have briefed their positions,[7] filed fact sheets[8] and charts,[9] met and conferred as to reducing the number of matters in dispute[10] and participated in a telephonic oral argument.[11]

For the following reasons the decision of the Commissioner will be reversed and the matter remanded for further proceedings.

## Facts

Woosley, who was 47 years old when his insured status expired in 2017,[12] is a high school graduate who then attended two years of college.[13] He is married and lives with his wife and two dogs.[14] He has work experience as a business owner where he performed work encompassing the tasks of laborer in a store setting and department manager.[15]

The ALJ found that on the date last insured Woosley had the following severe impairments: diabetes with peripheral neuropathy, obesity and hypertension.[16] In addition, the ALJ concluded that Woosley's complaints of migraines, occipital neuralgia, diabetic retinopathy, depression, anxiety and adjustment disorder were non-severe.[17] To that point,

---

[6] ECF No. 10.
[7] ECF Nos. 15 (Woosley); 18 (Commissioner).
[8] ECF No. 14 (Woosley).
[9] ECF No. 18, Attachment 1 (Commissioner).
[10] ECF No. 19.
[11] ECF No. 21.
[12] Tr. at 162.
[13] *Id*. at 127-31.
[14] *Id*. at 64.
[15] *Id.* at 76.
[16] *Id.* at 59.
[17] *Id*. at 59-60.

the ALJ further examined the mental impairments of depression, anxiety and adjustment disorder under the four functional "paragraph B" criteria and concluded that Woosley had no limitations in one area and no more than mild limitations in the other three.[18] The ALJ determined that none of the severe impairment met or medically equaled a listing.[19]

The ALJ reviewed, discussed and weighed the medical and opinion evidence in 12 pages of the decision.[20]

In the review of the psychological evidence and opinions, the ALJ gave great weight to the opinions of two state agency reviewers who found Woosley's impairments were non-severe.[21] He also gave considerable weight to a consultative examiner who conducted a one-time examination of Woosley in December 2016 and concluded that while Woosley's ability to deal with pressure was "variably impaired," he was otherwise "able to cognitively manage things in his life, including his business, if required."[22]

In the discussion of Woosley's physical limitations the ALJ did not explicitly recognize Dr. Andrew Kostraba, M.D., as Woosley's treating physician, despite noting multiple visits with Dr. Kostraba over many years.[23] The ALJ ascribed partial weight to a 2017 medical source statement from Dr. Kostraba opining on Woosley's ability to lift and

---

[18] *Id.* at 60-62.
[19] *Id.* at 62-63.
[20] *Id.* at 63-75.
[21] *Id.* at 71.
[22] *Id.* at 72
[23] See, *id.* at 73.

carry.²⁴ The ALJ then dismissed without assigning weight other portions of that opinion as to manipulative limitations, sit/stand option, requirement to elevate lower extremities and the need for unscheduled breaks.²⁵ He gave as reasons that these limitations are not supported by the record, specifically that the treatment notes do not themselves record such limitations.²⁶ Finally, the ALJ assigned little weight to a 2018 medical source opinion of Dr. Kostraba which contained numerous specific limitations.²⁷ The ALJ's stated reasons were that this opinion was not consistent with prior opinions and that "objective examination findings do not evidence a corresponding decline in [Woosley's] functioning."²⁸

As to other opinions of physical function, the ALJ gave partial weight to the physical function opinions of two state agency consulting physicians, Dr. Leon Hughes, M.D., and Dr. David Knierim, M.D.²⁹ Dr. Hughes gave his opinion in October 2016³⁰ and Dr. Knierim's opinion is dated April 2017.³¹ In discussing these two opinions the ALJ noted that he was adopting the "more restrictive limitations" of Dr. Knierim, who nonetheless opined that Woosley could frequently handle, finger and feel bilaterally.³² The ALJ also observed that he was including additional limitations in the RFC beyond those articulated

---

²⁴ *Id.*
²⁵ *Id.*
²⁶ *Id.*
²⁷ *Id.*
²⁸ *Id.*
²⁹ *Id.* at 71.
³⁰ *Id.* at 157-58.
³¹ *Id.* at 172-74.
³² *Id.* at 71.

by the state agency reviewers because of later evidence not available to the state agency reviewers at the time they gave their assessments.[33]

Based on the analysis of the medical opinions and evidence, Woosley was given an RFC for light work with additional limitations as to standing and walking, alternating positions with a brief period of being off-task, further restrictions on climbing, balancing, kneeling, working at heights or around machinery, and prohibitions on commercial driving and frequent exposure to extreme heat or cold.[34]

A vocational expert then testified that, under terms of the applicable RFC, several sedentary, unskilled jobs at the appropriate exertional level were available in significant numbers in the national economy.[35] Thus, Woosley was found to be not under a disability from the alleged onset date in January 2014 through December 31, 2017, the date last insured.[36]

## Analysis

Woosley here raises issues regarding whether the weight given to Dr. Kostraba's opinion is supported by the evidence, particularly since he is a treating source, and further questions whether substantial evidence supports the findings that his mental limitations are

---

[33] *Id.*
[34] *Id.* at 63.
[35] *Id.* at 77-78.
[36] *Id.* at 78.

not severe and that he can frequently handle and finger.[37] The Commissioner, in turn, contends that the ALJ's conclusions were all fully supported.[38]

Dr. Kostraba's opinion and the issue relating to Woosley's ability to finger and handle are interrelated since it is Dr. Kostraba's April 2018 opinion, which was given "little weight," that contains the finding that Woosley can only occasionally do fine and gross manipulation.[39] Next to that finding, Dr. Kostraba notes that this finding is based on an occupational report prepared on May 23, 2017.[40] That multi-page report, done by Christine Ontko of the Cleveland Clinic Rehabilitation and Sports Therapy department, was given limited weight because it was only a single evaluation and because, among other points, it did not reference any EMG studies.[41]

But before going further, it must be noted that this detailed seven-page report does provide a clear basis for Dr. Kostraba's opinion in this area and seriously calls into question the ALJ's comment that this opinion was somehow not based on any objective evidence simply because there were no EMG studies.[42] In fact, the report cites in great detail the results of grasping tests with each hand, pinch tests, fine motor coordination – citing results

---

[37] ECF No. 15 at 1.
[38] ECF No. 18 at 1.
[39] Tr. at 1258.
[40] *Id.*
[41] *Id.* at 74.
[42] *Id.*

of Moberg's Pickup Test – and Box and Block tests with each hand used to measure gross motor coordination.[43]

In short, and contrary to the ALJ's comments, Dr. Kostraba in his April 2018 opinion explicitly referred to an occupational therapy report containing the results of multiple, measurable examinations that fully supported his conclusion on Woosley's fine and gross manipulation limitations. The ALJ singular focus on a lack of one particular test – an EMG study – is not, without more, a good reason for ignoring or downgrading the evidence from multiple other studies that fully support Dr. Kostraba's opinion. To place such decisive emphasis on a single test like an EMG study the ALJ would have needed to show why only an EMG study would give valid results or why all the other documented evidence actually detailed in the report and employed by the Cleveland Clinic was, improbably, not consistent with "medically acceptable clinical and laboratory diagnostic techniques."[44]

All this is even more troubling because, as a treating physician under the rules applicable at the time, Dr. Kostraba was entitled to substantial deference.[45] Further, the ALJ cited no authority for the view that a treating physician may only opine on matters he or she has personally recorded in the treatment notes. Here, as noted, it was supported by appropriate evidence directly cited by the physician in the opinion.

---

[43] *Id*. at 1194.
[44] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).
[45] *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

In addition, as detailed above, both of the state agency reviewing sources gave their opinions, on which the ALJ largely relied, prior to this 2018 opinion by Dr. Kostraba.

Thus, I find that the ALJ did not give good reasons for assigning lesser weight to the 2018 opinion as relates to fingering and handling.[46]

That said, however, the question remains as to whether the ALJ's conclusions – and those of the state agency reviewers – are valid for the period between the onset date and the 2018 date of Dr. Kostraba's opinion. Dr. Kostraba did render a June 2017 opinion stating again that Woosley was limited to occasional fine and gross manipulation.[47] Once again, Dr. Kostraba based this opinion on the occupational therapy assessment of May 2017, making the reference in the check-box form itself.[48] Once again, the ALJ erred in giving it only partial weight. The previously stated explanation concerning the 2018 opinion also applies to the 2017 opinion.

---

[46] The weight assigned to Dr. Kostraba's opinion as to limitations on fingering and handling is critical given the VE's testimony at the hearing before the ALJ. The RFC ultimately adopted by the ALJ and incorporated into the critical hypothetical to the VE provided for light work with standing and walking limited to two hours per workday and for frequent handling and fingering. Tr. at 142-43. Not surprisingly, the VE responded that plaintiff could perform only sedentary jobs with those limitations. Tr. at 143. The ALJ then posed a second hypothetical changing the duration of standing and walking in a eight-hour day to four hours. In response the VE identified a mix of light and sedentary jobs. Tr.at 145-46. Woosley's attorney then asked if assuming the first hypothetical, changing the frequency of fingering and handling to occasional would eliminate all jobs previously identified. TR. at 146-47. The VE testified that it would. Tr. at 147.

[47] Tr. at 1086.
[48] *Id.*

In addition, it must be pointed out that although the ALJ was technically correct that Dr. Kostraba did not reference the supporting occupational study in the box directly opposite to the conclusion as to fingering and handling, Dr. Kostraba did so refer to this study a few lines down under the heading of "Please identify other limitations that would interfere with work 8 hours a day, 5 days a week."[49]

Under the rubric of reading Dr. Kostraba's opinion "holistically," which is something invariably urged on me by the Commissioner when an ALJ does not directly line up a conclusion with a piece of supporting evidence cited elsewhere in the opinion, I find that here Dr. Kostraba, read holistically, did cite to the medically acceptable results of the May 2017 occupational therapy study to support his fingering and handling opinion given in June 2017.

Thus, I conclude that only that portion of the ALJ's opinion that deals with Woosley's condition prior to June 2017, that is, the condition described in the last state agency reviewer opinion of April 20, 2017, can now be affirmed as supported by substantial evidence. The opinion as it deals with Woosley subsequent to April 20, 2017 is reversed and that time period is to be addressed on remand consistent with this opinion.

Because the question of Dr. Kostrba's opinions has required the remand I have not addressed the question of whether the ALJ correctly found that Woosley's mental impairments are not severe. The lack of a ruling here on that matter should not be construed

---

[49] *Id.*

as a negative decision on the merits of Woosley's claim, which has simply been held in abeyance. The ALJ on remand is instructed to reconsider the matter in light of the arguments made here.

Lastly, while the decision to call a medical expert is within the discretion of the ALJ,[50] it is well-recognized that the testimony of a medical expert may be useful in situations, such as here, where the evidence is "conflicting or confusing."[51] Given the almost singular focus by the ALJ here on EMG studies as the only acceptable proof for Woosley's alleged fingering and handling deficits – a reliance that doomed Dr, Kostraba's opinion – a medical expert with ability to discern and explain the truth in the situation would be more than helpful.

## Conclusion

Accordingly, for the reasons stated, the decision of the Commissioner that denied Paul Woosley's application for benefits up to April 20, 2017 is affirmed. For the time period after April 20, 2017, the denial of benefits is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: June 22, 2020                                     s/William H. Baughman Jr.
                                                        United States Magistrate Judge

---

[50] *Hipp v. Comm'r of Soc. Sec.*, 2018 WL 1954361, at * 10 (N.D Ohio April 5, 2018) (citations omitted); R&R aff'd *sub nom Hipp v. Berryhill*, 2018 WL 1933393 (N.D. Ohio April 24, 2018).
[51] *Hipp,* 2018 WL 1954361, at * 10 (quoting HALLEX 1-2-5-34 (Sept. 28, 2005)).